UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v.- | 18 Cr. 117-6 (KPF) |
| EMEKA NNAWUBA, | **ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

Defendant Emeka Nnawuba, who is currently incarcerated at the Federal Detention Center in Miami, Florida ("FDC Miami"), has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing the ongoing COVID-19 pandemic, his pre-existing medical conditions, and the conditions of his confinement. The Government opposes his motion. As set forth in the remainder of this Order, the Court denies Mr. Nnawuba's motion.

## BACKGROUND

On January 2, 2019, Mr. Nnawuba was charged in a sealed superseding indictment with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349 (Count One), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Two). (Dkt. #96 ("Indictment")). Mr. Nnawuba was arrested one month later, on February 11, 2019, and presented in the United States District Court for the Western District of Arkansas, before appearing in this Court on February 21, 2019. (Dkt. #102, 107).

The Indictment charged Mr. Nnawuba and others with participating in a scheme to defraud banks and to launder the proceeds of frauds that was perpetrated against dozens of victims. (Dkt. #95). As described in Mr.

Nnawuba's Presentence Investigation Report, to which the defense did not
object:

> From at least in 2016 up to and including at least 2018,
> EMEKA NNAWUBA, a/k/a "Benjamin Alabie,"
> participated in a scheme to defraud banks and launder
> the proceeds of frauds perpetrated against dozens of
> victims. Among other things, NNAWUBA used false
> identities and false passports to open bank accounts;
> received or attempted to receive nearly $1,000,000 in
> fraud proceeds; withdrew tens of thousands of dollars
> of fraud proceeds in cash; and transferred hundreds of
> thousands of dollars of fraud proceeds to bank accounts
> controlled by co-conspirators in an effort to conceal the
> source of funds.
>
> The funds laundered by EMEKA NNAWUBA, were
> procured principally by (a) romance scams, in which
> members of the scheme trolled dating websites to find
> unsuspecting women and stole their money on false
> pretenses; and (b) business compromise scams, in
> which members of the scheme impersonated
> individuals, professionals, or businesses in the course
> of otherwise ordinary financial transactions, and then
> fraudulently induced the counterparties to those
> transactions to transfer funds to bank accounts
> controlled and operated by NNAWUBA or other
> members of the scheme.

(Dkt. #221 (Final Presentence Investigation Report ("PSR")) at ¶¶ 16-17).

On August 1, 2019, Mr. Nnawuba pleaded guilty to conspiracy to commit

money laundering, in violation of 18 U.S.C. § 1956(h).  (Dkt. #177 (plea

transcript)).  The plea was entered pursuant to a written plea agreement with

the Government in which the parties stipulated that the applicable range under

the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 46

to 57 months' imprisonment.  (PSR ¶ 7).  During his plea allocution, Mr.

Nnawuba admitted to agreeing with others to open up bank accounts in the

name of other individuals, without those individuals' consent, for a fee,
knowing that "one of the purposes was to conceal the fact that the money in
the accounts … was the product of fraudulent activity."  (Dkt. #177 at 38-39).

Sentencing in the matter took place on July 8, 2021.  (Dkt. #288
(sentencing transcript); *see also* Dkt. #285 (judgment)).  The delay was
occasioned by the COVID-19 pandemic, though it bears noting that Mr.
Nnawuba was on pretrial release from the date of his arrest through the date of
his surrender to the Bureau of Prisons ("BOP").  (Dkt. #102, 107).  At
sentencing, the defense sought a non-Guidelines sentence of "Home
Confinement, Probation or a term of significantly less imprisonment than called
for by the Sentencing Guidelines" (Dkt. #279), while the Government sought a
sentence within the applicable Guidelines range (Dkt. #226).  During the
sentencing proceeding, the Court discussed with the parties their divergent
views regarding Mr. Nnawuba's conduct, which discussions prompted the
following exchange with the Government:

> THE COURT: In the defense submission, Mr. Stevens
> argues that Mr. Nnawuba was "the lowest of the low
> regarding his role in this scheme and his amount of his
> participation and knowledge was minimal."  I want to
> make sure that I understand what your investigation
> disclosed, and I thought I understood that the roles he
> played involved setting up or using false identities and
> false passports to open bank accounts, receiving funds
> in the bank accounts, withdrawing or transferring
> funds in the bank accounts, things of that nature.  Are
> there other things in which he was involved in the
> charged offense, as distinguished from any immigration
> matters?
>
> MR. SOBELMAN: Yes, your Honor.  So his principal
> conduct and the conduct that we charged him with and

3

that he was convicted of upon his plea of guilty was exactly what your Honor just described — opening I believe more than a dozen bank accounts with false identities; laundering, you know, more than a million dollars through those accounts to facilitate the kind of underlying wire fraud scheme.  But as the government's supplemental submission I think makes fairly clear, the defendant had all the tools and was discussing with other people the things that are necessary to participate in the wire fraud scheme itself.  He had a Tor Browser, he had access to the dark web, he had software that helped mask his own activities, he had access to the site ourtime.com, which is a dating site for individuals substantially older than himself, and one that is known to law enforcement to be someplace that people who participate in romance scams target people.  Of course not all people who are age 50 and older are senior citizens, but nonetheless, it's known as a site on which these scams can be perpetrated.  And it's difficult to understand why the defendant would have been accessing it otherwise, given that he's married and certainly not over the age of 50.  The government also found on the laptop Skype messages with an apparent co-conspirator, where they appear to be discussing credentials for the purposes of securing stolen personally identifying information, accessing a dark website, accessing another website not on the dark web but on the regular web that sold stolen information.  We think that there's — first of all, this evidence should be taken into account by the Court in terms of his history and characteristics, but also it's an indication, although not one perhaps beyond a reasonable doubt, that the defendant was involved in other related fraud as sort of a core activity as opposed to, quote-unquote, merely being involved in a money laundering scheme, like some of the other defendants your Honor has seen in this case.

(Dkt. #288 at 11-12; *see also, e.g.*, *id.* at 13 (Government contention that Mr. Nnawuba was the second-most culpable person in the charged conspiracy, below Franklin Ezeji); *id.* at 21-23 (Government contention that Mr. Nnawuba was involved in a fraudulent marriage scheme involving his sister); *id.* at 14-18

(defense counsel arguing that Court should not consider information in
Government's supplemental sentencing submission)).  The Court also heard
from one of the victims of the charged fraudulent scheme.  (*Id.* at 25-33).  The
defense focused on Mr. Nnawuba's remorse for his conduct; his recognition
that his conduct had injured people; his history of legitimate employment; and
his family circumstances.  (*Id.* at 33-46).

      Ultimately, the Court imposed a sentence of 40 months' imprisonment,
reasoning in part as follows:

> I accept Mr. Nnawuba's statements to me that he wasn't
> involved in speaking with individual victims.  That just
> wasn't an aspect in which he was involved....
>
> But where we part is with the efforts he's made this
> afternoon to portray his conduct as minimal — at best
> peripheral, a bad decision.  I agree with the government
> here that there were dozens, scores, perhaps even more
> bad decisions that were undertaken over a multiyear
> period, and unlike some of the other defendants I've
> sentenced in this case, you had very, very discrete
> roles — obtaining a passport for someone; Mr.
> Nnawuba had visibility into a key part of the scheme,
> the actual money; he set up these accounts; he knew
> the funds coming into these accounts were the proceeds
> of criminal activity; and he laundered nearly a million
> dollars of money he knew belonged to someone other
> than he and other than the folks with whom he was
> working.  And so I can't find that minimal.  I certainly
> can't find that peripheral.  That was at the heart of this
> matter.
>
> I take the point of the defense about the consequences
> that Mr. Nnawuba has faced.  I take as well their
> statement about what he has done since his arrest.  I'm
> sure it has been hard on him, I'm sure it has been hard
> on his family, his growing family, that I've had the
> pleasure to meet this afternoon.  I commend him for
> setting up the business with his wife, for being a good
> child to his parents.  I'm certain that it has been difficult

awaiting sentencing in the middle of a pandemic, and I appreciate the efforts at rehabilitation.

I appreciate as well his service to this country in the Army, and his return to or his deepening of his faith.

But still I find that these good things are counterbalanced, if not outweighed, by the conduct in which he engaged. I do think as well that he was involved in other conduct involving transactions or interactions on the dark web and perhaps as well immigration fraud, but while I've heard that evidence, it's not actually going to be taken into account in this sentence that I impose.

The question for me is whether a guidelines sentence or a below-guidelines sentence is appropriate here, and I have listened to Mr. Stevens speak about [18 U.S.C. §] 3553(a)(6) and not wanting unwarranted sentence disparities. I do think Mr. Ezeji remains at the top of this particular conspiracy, but he was different. There was a rescue effort in which he was involved that I don't think anybody else has common to them; he was going to be deported; and he wisely decided to sentence himself before I had full visibility into this scheme. And thinking about this at some length in the robing room, I'm not comfortable sentencing Mr. Nnawuba above Mr. Ezeji, but I am comfortable sentencing him at that same level.

And so I am imposing a term of 40 months' imprisonment, and the downward variance is only because I think Mr. Ezeji was more culpable..

(Dkt. #288 at 52-54). Rather then remand Mr. Nnawuba at that time, the

Court permitted him to self-surrender to his designated facility on or before

September 24, 2021. (*Id.* at 56; Dkt. #285).

Mr. Nnawuba filed a *pro se* motion for compassionate release on

January 7, 2022. (Dkt. #290). The Government opposed Mr. Nnawuba's

motions in a letter brief dated February 7, 2022. (Dkt. #293). Mr. Nnawuba filed a reply brief on February 17, 2022. (Dkt. #295).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A)(i), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021) (summary order). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has summarized the standards pursuant to which district courts must evaluate compassionate release applications:

Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); see [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, 21 F.4th 67, 71 (2d Cir. 2021); *accord United States* v. *Halvon*, 26 F.4th 566, 570 (2d Cir. 2022); *see also United States* v. *Martinez*, No. 06 Cr. 987-1 (DC), 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021) (discussing what can qualify as "extraordinary and compelling reasons").

## DISCUSSION

While the Government disputes this threshold fact, the Court finds that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A)(i) has been satisfied. (*Compare* Dkt. #293 at 1 (Government contention that Mr. Nnawuba has not exhausted his administrative remedies), *with* Dkt. #295 at 14 (Mr. Nnawuba's compassionate release request to facility warden)). The Court thus proceeds to consider whether Mr. Nnawuba has identified "extraordinary and compelling reasons" warranting his release, and concludes that he has not.

Mr. Nnawuba's arguments for compassionate release concern the Memphis Satellite Camp to which he was originally designated. (*See* Dkt. #290, 295). The Court will construe these arguments as applying equally to his current detention facility, FDC Miami. In brief, Mr. Nnawuba argues that the conditions of his incarceration place him at a higher risk of contracting COVID-19 (or of having a more severe reaction if infected), because of the congregate setting, his existing medical condition of asthma, and the inability of prison staff to handle an outbreak of the virus. (*Id.*). Courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons. *See, e.g.*, *United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL

9

2555332, at *2 (S.D.N.Y. May 20, 2020); *see also United States* v. *Bush*, No. 17
Cr. 611-4 (AT), 2021 WL 3097417, at *2 (S.D.N.Y. July 21, 2021) ("Courts have
granted modified sentences in light of COVID-19 for inmates with illnesses or
injuries that make them particularly vulnerable to COVID-19.  By contrast, in
cases where an inmate does not suffer such illnesses or injuries, courts in this
district have denied requests for compassionate release." (internal citations
omitted)).

        Recognizing the expansive discretion identified by the Second Circuit in
*Brooker*, this Court continues to align itself with those courts that have found
"that the risks posed by the pandemic alone do not constitute extraordinary
and compelling reasons for release, absent additional factors such as advanced
age or serious underlying health conditions that place a defendant at greater
risk of negative complications from the disease."  *United States* v. *Nwankwo*,
No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020)
(collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020
WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release
motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry,
made in the 'unique circumstances' and 'context' of each individual defendant.
In practice, courts in this district have considered the age of the prisoner; the
severity and documented history of the defendant's health conditions, as well
as the defendant's history of managing those conditions in prison; the
proliferation and status of infections in the prison facility; the proportion of the
term of incarceration that has been served by the prisoner; and the sentencing

10

factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

Mr. Nnawuba has not demonstrated the existence of extraordinary and compelling circumstances in his case. Mr. Nnawuba is 31 years old, which does not place him at an elevated risk of contracting or dying from COVID-19, particularly since he received two doses of the COVID-19 vaccine before surrendering to BOP. (Dkt. #293 at 3). *See Demographic Trends of COVID-19 cases and deaths in the US reported to CDC*, CENTERS FOR DISEASE CONTROL AND PREVENTION ("CDC"), https://covid.cdc.gov/covid-data-tracker/#demographics (accessed May 2, 2022). Notably, when asked by the Probation Office in September 2019 to identify any medical conditions, Mr. Nnawuba reported that he was "in good physical health." (PSR ¶ 47). Even were the Court to find that Mr. Nnawuba's current asthma condition is "moderate or severe" — which is what the CDC states might increase an individual's chances of contracting severe illness from the COVID-19 virus — there are other factors to consider. *See* CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed May 1, 2022); *For People Living in Prisons and Jails*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html (accessed May 1, 2022).[1]

---

[1]     *See also United States* v. *Jones*, 17 F.4th 371, 375 (2d Cir. 2021) ("While current guidance from the Centers for Disease Control and Prevention ('CDC') lists 'moderate-to-severe' asthma as a condition that 'can make [it] more likely' that a COVID-19 infection

Among other things, Mr. Nnawuba's vaccinated status mitigates, though it does not reduce entirely, his risk of contracting the COVID-19 virus and having serious medical conditions, and it further counsels against a finding of "extraordinary and compelling reasons." *See United States* v. *Bailey*, No. 97 Cr. 269 (DLC), 2021 WL 4942954, at *2 (S.D.N.Y. Oct. 22, 2021) ("While the intersection of the COVID-19 pandemic and underlying health conditions can serve as an extraordinary and compelling circumstance justifying compassionate release, Bailey is fully vaccinated against COVID-19 and his medical records indicate that his chronic health conditions are well-controlled. Bailey's risk of continued incarceration given the COVID-19 pandemic does not qualify as an extraordinary and compelling circumstance.").

Federal courts, including this Court, have been appropriately concerned about the conditions of confinement at federal facilities during the pandemic. *See, e.g.*, *United States* v. *Hatcher*, No. 18 Cr. 454-10 (KPF), 2021 WL 1535310, at *4 (S.D.N.Y. Apr. 19, 2021); *United States* v. *Thaher*, No. 17 Cr. 302-3 (KPF), 2020 WL 3051334, at *5-6 (S.D.N.Y. June 8, 2020), *reconsideration denied*, No. 17 Cr. 302 (KPF), 2020 WL 5202093 (S.D.N.Y. Sept. 1, 2020).  To that end, this Court has repeatedly reviewed the BOP's COVID-19 Plan, *see* https://www.bop.gov/coronavirus/ (last accessed May 2, 2022), as well as the BOP's listing of confirmed cases among inmates and staff at each facility.  As of

---

will result in severe illness, People with Moderate to Severe Asthma, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/asthma.html (updated Apr. 7, 2021), [Defendant] does not claim that he suffers from moderate or severe asthma, rather than a mild form of asthma.").

the date of this Order, the BOP has identified seven current cases of COVID-19 among inmates at FDC Miami and no current cases among staff.  On balance, this Court concludes that the danger that Mr. Nnawuba faces from infection with COVID-19, even accounting for his proffered medical condition, does not amount to an extraordinary and compelling reason for granting compassionate release.  *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia.  But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Nnawuba's motion.  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant."  *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C).  Mr. Nnawuba engaged over a period of years in a scheme that defrauded dozens of people of millions of dollars; some $2 million in fraud proceeds was laundered through bank accounts that he opened with the specific intent to conceal the source of the funds.  Indeed, Mr. Nnawuba operated near the apex of the charged conspiracy.  Separately, the Government presented substantial evidence that Mr. Nnawuba was engaged in additional criminal conduct, including accessing

13

the dark web, procuring (or attempting to procure) additional personal identifying information, and engaging in immigration fraud.  Finally, during the worst of the pandemic, Mr. Nnawuba was permitted to remain on bail and to self-surrender months after his sentencing date.  He has served only a few months of the 40-month term the Court imposed, and to grant his compassionate release motion on this record would undercut the balance of the Section 3553(a) factors that the Court employed at his sentencing.  Accordingly, even if the Court had found extraordinary and compelling circumstances on the facts presented, which it has not, it would deny Mr. Nnawuba's application based on its consideration of the Section 3553(a) factors.[2]

---

[2]    To the extent that he has not otherwise done so, Mr. Nnawuba can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP.  *See also Discretion to Continue the Home-Confinement Placements of Federal Prisoners After the COVID-19 Emergency*, 45 Op. O.L.C. 1 (Dec. 21, 2021) (slip op.).  The decision to grant any such relief is reserved to the discretion of the BOP.

**CONCLUSION**

For the foregoing reasons, the Court DENIES Defendant Emeka Nnawuba's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Clerk of Court is directed to terminate the motion at docket entry 290.

The Court also directs the Clerk of Court to mail a copy of this Order to Mr. Nnawuba at the following address: Emeka Nnawuba, Reg. No. 15297-010, FDC Miami, Federal Detention Center, P.O. Box 019120, Miami, FL 33101.

SO ORDERED.

Dated:   May 3, 2022
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

15